# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY L. GREEN,** *et al.***,**      ) | |
| ) | |
| **Plaintiffs,**      ) | |
| ) | |
| **v.**      ) | **Case No. 2:15-cv-697-DAB** |
| ) | |
| **HAL TAYLOR, in his official**      ) | |
| **capacity as Acting Secretary of**      ) | |
| **Law Enforcement for the Alabama**      ) | |
| **Law Enforcement Agency,** *et al.***,**      ) | |
| ) | |
| **Defendants.**      ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment of Defendants Jackie Graham and Stan Stabler[1] (Doc. 37), Memorandum of Law in Support of Motion for Summary Judgment by Jackie Graham ("Graham"), in her individual and official capacities, and Stan Stabler ("Stabler"), in his official capacity (Doc. 38), Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 44), Defendants' reply (Doc. 48), Defendants' Response to Order[2] (Doc. 63), Plaintiffs' Rebuttal to Defendants' Response to Order (Doc. 64), and Defendants' Reply to Order (Doc. 65).[3] Oral argument on the motion was heard January 18, 2017. The parties have had the opportunity to fully brief the issues. For the reasons that follow, the court **denies** Defendants' motion for summary judgment (Doc. 37).

---

[1] Stan Stabler has been replaced by Defendant Hal Taylor, in his official capacity as Acting Secretary for the Alabama Law Enforcement Agency. (Doc. 60).

[2] On May 31, 2017, the Court issued an order and notice pursuant to Fed. R. Civ. P. 56(f) to advise the parties that the court may consider the pleadings as cross motions for summary judgment and allowed the parties additional briefing to the extent they deemed necessary. (Doc. 55). Defendants requested additional briefing. (Doc. 56). The Court set a briefing schedule. (Doc. 62). The parties submitted additional argument. (Docs. 63, 64, 65).

[3] The claims against Graham and Stabler individually have been dismissed by Court Order (Docs.36, 40), and thus are not substantively addressed herein.

Also before the Court is Defendants' motion to disregard certain evidence submitted by Plaintiffs (Doc. 47), and Plaintiffs' response in opposition. (Doc. 49). Because the court concludes on the record before it that questions of fact preclude summary judgment in Defendants' favor, Defendants' motion to disregard certain evidence (Doc. 47) is **denied as moot**.

I.    **Procedure and Background**

   *A. Procedural History*

   Plaintiffs, Anthony L. Green ("Green"), Brooke M. Walker ("Walker"), and Earl E. Howton, Jr. ("Howton"), are currently employees of the Alabama Law Enforcement Agency ("ALEA") and participants in the Employees' Retirement System of Alabama ("RSA"). (Doc. 14, ¶¶ 2–4). The RSA is comprised of the Teachers' Retirement System ("TRS") and the state employees' retirement system ("ERS"). The retirement benefits at issue here are under the purview of ERS, which administers the Law Enforcement and State Policeman retirement plans.

   Plaintiffs instituted this lawsuit in the circuit court of Montgomery, Alabama, on September 11, 2015, asserting causes of action for violations of the Equal Protection provisions of the United States and Alabama Constitutions. (Doc. 1-1). Plaintiffs sued Defendants, Spencer Collier ("Collier"), in his representative capacity as Secretary of Law Enforcement for the ALEA, and Dr. David G. Bronner ("Bronner"), in his representative capacity as Chief Executive Officer of the RSA. *Id.* On September 21, 2015, Collier removed the action to this Court with the consent of all Defendants under 28 U.S.C. § 1441, because Plaintiffs' complaint alleges violation of rights under the United States Constitution. (Doc. 1). On September 28, 2015, Plaintiffs voluntarily dismissed Bonner. (Doc. 3). Attached to the notice of dismissal was a letter from ERS's counsel stating that ERS will calculate and pay Plaintiffs state policeman retirement benefits upon their retirement provided the lawsuit brings about equitable relief classifying them as "state policemen"

under Alabama Code § 36-27-1(23),[4] and the appropriate amount of employee and employer contributions are made and continue to be made for so long as Plaintiffs are active employees in the classification of "state policemen."  (Doc. 3-1).

On February 19, 2016, Plaintiffs filed a two-count amended complaint alleging constitutional violations of equal protection and due process against Collier, in his individual and official capacities, and Graham, individually and in her official capacity as Director of the State of Alabama Personnel Department.[5]  (Doc. 14).  In September 2016, Plaintiffs moved to dismiss the claims against Graham individually, which the Court granted in November 2016.  (Docs. 29, 40).

Graham and Stabler filed their Motion for Summary Judgment and supporting memorandum on November 2, 2016.  (Docs. 37, 38).  In support of their motion, Defendants filed affidavits of Stabler and Graham, deposition testimony of Green and Howton, trial testimony of Walker, Graham, and others,[6] Plaintiffs' discovery responses, RSA Board meeting minutes from December 15, 2008, and State Personnel Board meeting minutes from December 17, 2014.  (Doc.

---

[4] Alabama Code defines "state policeman" as follows:

> (23) State policeman. An employee in the classified service under the Merit System Act approved by the State Personnel Board to perform the duties of highway patrolman or a beverage control agent or a crime investigator. The term includes any employee hired by the Alabama State Law Enforcement Agency after January 1, 2015, who is certified by the Alabama Peace Officers' Standards and Training Commission and performs law enforcement duties. Such an employee of the Alabama State Law Enforcement Agency shall pay the same employee contribution rate as and receive the same benefits as Tier II law enforcement officers, as defined by Section 36-27-59(a)(3). The term shall not include a member employed as a policeman under Section 36-27-6.

Ala. Code § 36-27-1.

[5] Plaintiffs moved to amend their complaint, originally filed in state court and removed to this Court by Defendants, to comply with the federal pleading requirements.  Additionally, Plaintiffs deleted references in their Complaint to RSA who is no longer a party and added Graham as a party Defendant. (Doc. 12).  On February 19, 2016, the Court granted Plaintiffs' motion for leave to amend.  (Doc. 13).

[6] The testimony of Walker and Graham is from the trial in which Walker was sued by the Alabama State Personnel Board and ALEA seeking the return of purported over-payments of salary.  *See* Complaint in the case *State of Alabama, et al., v. Brooke M. Walker* (Doc. 44-37).  Following a bench trial, an Order and Judgment were entered in Walker's favor finding she lawfully received her salary.  (Doc. 44-42).  The Alabama Court of Civil Appeals affirmed the judgment in favor of Walker.  (Doc. 59-1).  The Alabama Supreme Court denied the Defendants' petition for writ of certiorari, making the judgment in Walker's favor final.  (Doc. 59-2).

39). Plaintiffs filed a memorandum opposing the motion along with affidavits, depositions, and other evidentiary support for their position. (Doc. 44). Defendants replied. (Doc. 48). In response to the Court's order and notice pursuant to Fed. R. Civ. P. 56(f), the parties submitted additional briefing. (Docs. 63, 64, 65). Defendants filed a motion requesting the court disregard certain evidence filed on behalf of Plaintiffs, which Plaintiffs opposed. (Docs. 47, 49).

In September 2016, the Court granted Plaintiffs' unopposed motion to substitute Stabler in his official capacity as Secretary of Law Enforcement for the ALEA in the place of Collier, who no longer held the position, and to dismiss the individual claims against Collier. (Docs. 34, 36). On June 14, 2017, the Court granted Plaintiffs' motion to substitute Hal Taylor as Acting Secretary of the ALEA in place of Stabler. (Doc. 60).

*B. Factual Background*

1.  <u>Merit System Act, DPS, ABI option, and ALEA</u>

In 1935, Alabama created the Alabama Highway Patrol. (Doc. 39-1, ¶ 2). In 1939, a reorganization occurred, and the Department of Public Safety ("DPS") was established.[7] *Id.* The Alabama Bureau of Investigation ("ABI") is the investigative division of DPS and provides investigative services in support of other members of the criminal justice system in Alabama. *Id.*; (Doc. 44-4 at 2). The Merit System Act created the Alabama State Department ("SPD") which is administered by the State Personnel Director who answers to the State Personnel Board. (Doc. 39-2, ¶¶ 3, 4). "The Merit System Act delegates administrative authority to the Personnel Board, to make rules, not inconsistent with existing laws." *Simpson v. Van Ryzin*, 265 So. 2d 569, 575

---

[7] According to the ALEA's website, the mission of DPS was "to protect and serve Alabama residents equally and objectively, enforce state laws and uphold the constitutions of the United States and the state of Alabama … by enforcing traffic laws, issuing driver licenses, curtailing criminal activity by initiating investigations and/or providing investigative assistance to other agencies, and preserving life and protecting property by responding to natural disasters, riots and other emergencies." (Doc. 44-4 at 2).

(1972).  Graham is the State Personnel Director of SPD and is also vice chair of the Board of Control which manages the ERS.  (Doc. 39-2, ¶ 2).

The purpose of the Merit System Act is "to assure to all citizens of demonstrated capacity, ability and training an equal opportunity to compete for service with the State of Alabama, to establish conditions in the state service which will attract officers and employees of character and capacity and to increase the efficiency of the governmental departments and agencies by the improvement of methods of personnel administration."  ALA. CODE § 36-26-3 (1975).

Positions in the service of the state are divided into the exempt, the unclassified, and the classified.  ALA. CODE § 36-26-10 (1975).  Classified service includes all other officers and positions in the state service that are not exempt[8] or unclassified.[9]  It is undisputed that Plaintiffs here are in classified positions under the Merit System.

The Merit System Act required the creation of a classification plan.  ALA. CODE § 36-26-11 (1975).  Upon enactment of this article, the Director was tasked with "ascertain[ing] and record[ing] the duties of each position in the state service and, after consultation with appointing authorities and principal supervising officials, recommend to the board a classification plan, together with proposed rules for its administration."  ALA. CODE § 36-26-11.  The plan showing each class of position in the state service was to be made public along with the rules for its administration.  *Id.*  "Each such class shall include positions requiring duties which are substantially similar in respect to the authority, responsibility and character of the work required in the performance thereof."  ALA. CODE § 36-26-11.

According to Graham, "[a] classification is a job grouping that groups positions together that are performing similar duties and responsibilities, require similar minimum qualifications,

---

[8] *See* ALA. CODE § 36-26-10(b) (defining those individuals included in "exempt service").
[9] *See* ALA. CODE § 36-26-10 (defining those individuals included in "unclassified service").

they have a similar examination, and they're also paid in the same pay range." (Doc. 44-9 at 13). Job classifications established by the Personnel Department carry important rights and benefits in that salaries, benefits, and future promotional opportunities are, or may be, dependent on the specific classification given to a particular job. (Doc. 14, ¶ 8). At issue in this lawsuit is the "Special Agent" job classification, which is assigned classification 11280, which is the Special Agent classification already in use for professional investigators employed by the Alabama Attorney General's Office. (Docs. 39-2, ¶ 9; 44-8, ¶ 4). An ABI Option was added to the Special Agent classification in 2008. (Doc. 39-2, ¶ 14). DPS requested the ABI option code within the Special Agent classification because of its need for more investigators to work on particular law enforcement tasks without reducing the number of troopers patrolling highways and investigating traffic accidents. *Id.*, ¶ 20. In 2008, special agents (11280 classification) employed by the Attorney General's Office were participating in the State Policeman retirement plan. *See* Ala. Code § 36-15-62(e).

The Special Agent (ABI option) position was first announced August 6, 2008. (Doc. 44-7). Although the position was titled "special agent," the Position Announcement developed by the State Personnel Board provided,

> Special Agent (ABI Option) is a permanent full-time position used by the Alabama Department of Public Safety. …This is highly responsible work *conducting state-wide investigations in the enforcement of state and federal laws and regulations*.

(Doc. 14-1) (emphasis added). The Special Agent program allowed DPS to direct hire experienced investigators. Prior to this time, investigators had traditionally been promoted from the state trooper ranks and then given extensive training to become professional investigators. (Doc. 44-5 at 1). The creation of the Special Agent (ABI Option) program in 2008 allowed ABI to directly hire experienced professional criminal investigators from outside DPS, and save the expense, time, and effort typically involved in training in-house investigators. *Id.* at 2. According to Major

Connor, "[t]he Special Agents hired directly supplement the existing trained, skilled investigators within the ABI without a corresponding decrease in the troopers for the Highway Patrol." *Id.*

After a competitive interview and application process, Plaintiffs were offered employment in 2009 as Special Agents (ABI Option) working for DPS. (Doc. 14, ¶ 12). At the time Plaintiffs were hired, all employees working in a law enforcement capacity for ABI or DPS participated in the enhanced retirement program for state policemen. *Id.*, ¶ 16. Plaintiffs do not participate in "state policeman" retirement. Plaintiffs allege they have been denied due process and equal protection under the Constitutions of the United States and Alabama due to Defendants' refusal to provide them with state policeman retirement benefits. *Id.*, ¶¶ 36, 39.

In 2013, Act 2013-67 created the Alabama State Law Enforcement Agency ("ALEA"), which is codified in the Code of Alabama, sections 41-27-1 to 41-27-9 (2013). ALEA was established to coordinate public safety in the state and is comprised of the DPS and the State Bureau of Investigations. ALA. CODE § 41-27-1 (2013). The State Bureau of Investigations ("SBI") succeeded the ABI. ALA. CODE § 41-27-5(a) (1975). SBI also received the investigative functions from several other state agencies. *See* ALA. CODE §§ 41-27-5(c)–(d). Thus, ALEA represented the consolidation and realignment of 12 state law enforcement agencies or functions into one entity. (Doc. 39-1, ¶ 3). The agencies from which functions and personnel were transferred are referred to as "legacy agencies." *See* ALA. CODE § 41-27-7(a).

Alabama Administrative Code provides, "[t]he Director shall, on [her] own initiative, make periodic investigations of any and all positions in order to determine changes in duties and responsibilities of positions as a basis for keeping the classification plan up-to-date." Ala. Admin. Code 670-X-7-.06 (2015).[10] It further provides, "[e]xisting classes may be abolished or changed

---

[10]Chapter 670-X-7 of the Alabama Administrative Code was first filed September 29, 1981, and supplemented September 30, 1990. This provision of the code identifies its statutory authority as ALA. CODE § 36-26-11.

or new classes added on recommendation of the Director and favorable vote of the Board in a meeting. New classes and pay range changes must be approved by the Governor." Ala. Admin. Code 670-X-7-.02 (2015). According to Graham's affidavit, the classification plan currently consists of approximately 1,300 job classifications, which can vary with job classifications being abolished if no longer needed and new classifications created if needed. (Doc. 39-2, ¶ 6).

## 2. Employees' Retirement System of Alabama (ERS)

The State of Alabama has a statutorily-created retirement system for state employees which is governed by a Board of Control. *See* ALA. CODE § 36-27-2 (1975). As provided by subsection (a) to § 36-27-2, "[a] retirement system is hereby established as a body corporate and placed under the management of the Board of Control[11] for the purpose of providing retirement allowances and other benefits under the provisions of this article for employees of the State of Alabama." ALA. CODE § 36-27-2(a). The ERS consists of three general plans, each providing a different level of benefits. It is undisputed the plan providing the most or highest level of benefits is that of "State Policeman." (Docs. 38 at 15; 44 at 2). The other two state employee retirement plans – for law enforcement and state employees – provide lesser-valued benefits. For retirement benefit purposes, Plaintiffs have been classified as "Law Enforcement," but seek the more lucrative classification of "State Policeman."

In pertinent part, Alabama Code § 36-27-1(23), defines "State Policeman" as "[a]n employee in the classified service under the Merit System Act approved by the State Personnel Board to perform the duties of highway patrolman or a beverage control agent or a crime

---

[11]The Board of Control consists of thirteen trustees who are vested with "general administration and responsibility for the proper operation of the retirement system." ALA. CODE § 36-27-23 (1975). The trustees include the Governor, the Treasurer, the State Personnel Director, the Director of Finance, three members of the retirement system to be appointed by the Governor, two members of the State Employees' Retirement System, one member from the ranks of retired state employees, and one member from the ranks of retired city, county, or public agency employees, and two members of the retirement system employed by a city, county or public agency. ALA. CODE §§ 36-27-23(b)(1)–(8).

investigator." ALA. CODE § 36-27-1(23). According to Graham, "[a]bsent statutory authority, no employee in the Special Agent classification is in the State Policeman retirement." Doc. 36-2, ¶ 19. Plaintiffs submit that ALA. CODE § 36-27-1(23) defines the qualifications to participate in state policeman retirement benefits and provides their statutory entitlement to this retirement as they are classified under the Merit System Act and approved to perform the duties of crime investigator. (Doc. 44 at 3).

The ERS also classifies employees as Tier I or Tier II based on whether or not they were employed by the State of Alabama before January 1, 2013. *See* ALA. CODE § 36-27-1(24)–(27). The Plaintiffs, who were hired in 2009, are considered Tier I.

### 3. The Parties

Plaintiff Green moved to Alabama in 2005 after retiring from New York state police department as an investigator. (Doc. 39-3 at 10). He worked from September 2005 to January 2009 as a fraud investigator for Alabama Medicaid. *Id.* at 11–12. While with Medicaid, he was in the standard state retirement. *Id.* at 29. He applied in August 2008 and was hired in January 2009 as a full-time investigator for ABI–special agent option. The "major purpose" of his position was to "[c]onduct thorough criminal and special inquiry investigations and write comprehensive reports detailing all investigative efforts and findings. Assist in case preparation and presentation in all related prosecutorial actions and/or court proceedings." (Doc. 44-11 at 1). Prior to being hired, he spoke with Major Connors (the head of ABI) about the position and the fact it came with "trooper retirement" benefits.[12] (Doc. 39-3 at 36–38). Shortly after beginning employment in 2009, Green saw FICA was not being deducted from his paycheck. When he inquired with the personnel department about it, he learned he was not getting state policeman retirement. *Id.* at 44–

---

[12] The deposition testimony and briefs use references to "trooper retirement," "enhanced retirement," and "state policeman" benefits interchangeably. *See, e.g.*, (Docs. 39-3 at 36–37; 39-5 at 25).

46). When Green was hired as a Special Agent, he was in the classification 11280-483. (Doc. 39-2 at 14, ¶ 45). His classification was later changed to 11276, effective February 9, 2015. *Id.*

Plaintiff Howton attended and completed the Montgomery Police Academy and worked twenty-seven years with the City of Montgomery Police Department. (Doc. 44-14 at 3). During his career, Howton worked patrol, traffic, undercover operations, and eventually as a detective in the homicide unit and internal investigations for the city. *Id.* at 3–4. In late 2008, he applied for the Special Agent (ABI option) with the state. *Id.* at 5. He was hired and started working January 16, 2009. *Id.* at 5–6. His job duties include working homicide cases and special inquiries which could be officer-involved shootings or requests from other agencies to investigate a situation. *Id.* at 7–8. His duties have not changed since being hired in 2009. *Id.* at 8. Howton does not recall having a discussion about retirement benefits when he was recruited to ABI, but he always assumed he would receive, and be participating in, state policeman retirement like his fellow investigators at ABI. *Id.* at 6. Howton learned he did not have state policeman retirement about four and one-half years after he was hired in January 2009. *Id.* When Howton was hired as a Special Agent-ABI option, he was in the classification 11280-483. (Doc. 39-2 at 14, ¶ 44). His classification changed to 11276 effective February 9, 2015. *Id.*

Plaintiff Walker was employed by the City of Montgomery Police Department as a sergeant in the detective division prior to accepting employment in 2006 as a Special Agent in the Alabama Attorney General's Office. (Doc. 44-17 at 13). Her duties with the Alabama Attorney General's office began in public corruption, investigative work, and eventually she became a member of the Internet Crimes Against Children Taskforce which was hosted by DPS and ABI. *Id.* She worked three years for the Attorney General's office and was hired effective June 16, 2009, by DPS as a Special Agent (ABI Option). *Id.* at 13, 16. She had state policeman retirement benefits while employed with the Attorney General's office. *Id.* at 15. She initially had hesitations about

switching to DPS because she was told the retirement for the Special Agent (ABI option) was identified as Law Enforcement retirement. *Id.* When Walker was hired in 2009, she was told that the new position under the ABI Option had Law Enforcement retirement, but that this was an oversight that would be fixed. *Id.* At the Attorney General's office, Walker was classified 11280-443. (Doc. 39-2 at 13, ¶ 40). Upon being hired as a Special Agent-ABI option, her classification was 11280-483. *Id.*, ¶ 41. Effective February 1, 2015, her classification was changed to 11276. *Id.* at 13–14, ¶ 42.

Defendant Secretary of Law Enforcement for the ALEA is the executive officer of the day-to-day management of ALEA and is ultimately responsible for the personnel employed by the ALEA and for ensuring such personnel receive equal treatment under the law and due process as required by the Constitutions of the United States and the State of Alabama. (Doc. 14, ¶ 5).

Defendant Graham is Executive Director of the State of Alabama Personnel Department and is responsible for directing and supervising all administrative and technical activities of the Personnel Department, investigates and makes recommendations concerning the administration of the State Merit System, and reports and makes recommendations to the Personnel Board regarding the State Merit System. *Id.*, ¶ 6. As highest executive officer within the Personnel Department, Graham is responsible for ensuring the Personnel Department complies with applicable state and federal laws. *Id.*

## II.     Jurisdiction

Plaintiffs allege violations of Equal Protection and Due Process under the Fourteenth Amendment to the United States Constitution as well as the Alabama Constitution and seek a remedy pursuant to 42 U.S.C. § 1983 to compensate them for the alleged violations. The parties do not dispute the Court's jurisdiction or venue. The federal constitutional claims arise under federal law, and thus, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§

11

1331 and 1343.  On February 1, 2016, an Order was entered on the parties' consent to Magistrate Judge jurisdiction for all matters pursuant to Rule 73, Fed. R. Civ. P., and 28 U.S.C. § 636(c). (Doc. 10).

## III.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative."  *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Sawyer*, 243 F. Supp. 2d at 1263 (quoting *Anderson*, 477 U.S. at 251–52).

## IV. Analysis

Defendants argue they are entitled to summary judgment as a matter of law on Plaintiffs' Due Process and Equal Protection Clause claims. On the due process claims, Defendants argue Plaintiffs have no property interest or claim of entitlement in state policeman retirement benefits. Defendants further argue the Equal Protection Clause does not require government decision-makers to articulate any reasons for their actions, nor does it require record evidence of a legitimate purpose. Regarding Plaintiffs' claims under the Alabama Constitution, Defendants argue § 1983 cannot be used to remedy violations of state constitutions and the Alabama Constitution contains no equal protection clause protections. Additionally, Defendants argue the statute of limitations and doctrine of immunity bar Plaintiffs' claims.

### A. Due Process Violations

Plaintiffs allege Defendants have denied them substantial and valuable employment rights without due process of law as guaranteed by the constitutions of the United States and Alabama. (Doc. 14, ¶ 39). Defendants argue Plaintiffs cannot establish that they have or had a constitutionally-protected property interest in the retirement benefits they seek. (Doc. 38 at 47). Plaintiffs contend they have a recognized property interest by virtue of their employment, and that interest is in state policeman retirement benefits. (Doc. 44 at 73–75).

The Fourteenth Amendment to the United States Constitution provides, in part, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONSTITUTION, Amend. XIV. "The Due Process clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)

(citation omitted). In a procedural due process claim, the constitutional violation becomes actionable when the State fails to provide due process. *Id.* at 126.

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Defendants in their motion challenge only the first element, claiming Plaintiffs are unable to establish a legitimate claim of entitlement in a property interest. Specifically, Defendants argue that Plaintiffs cannot point to any statute, regulation, internal policy or rule sufficient to create a property interest in the retirement benefits they seek.

In circumstances where there is an expectation of continued employment, the Supreme Court has found that public employees have interests in continued employment that are safeguarded by due process, and "[c]ertain attributes of 'property' interests protected by procedural due process emerge" from application of this principle. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The Court went on to explain, "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Plaintiffs here claim their property interest in state policeman retirement benefits derives from Alabama law, i.e., ALA. CODE §36-27-1(23), as each Plaintiff is "[a]n employee in the classified service under the Merit System Act approved by the State Personnel Board to perform

the duties of … crime investigator." Plaintiffs contend after being promised state policeman retirement, the State Personnel Board directed Plaintiffs be excluded from state policeman retirement. They submit they have been denied this right without due process. Plaintiffs explain that DPS (now known as ALEA) and RSA have all deferred, to Plaintiffs' detriment, to the State Personnel Department's directive. Plaintiffs argue their due process rights were denied in 2009, and continued to be denied as Plaintiffs were encouraged to forego asserting their rights with promises that corrective action would be taken. (Doc. 44 at 77–78).

The applicability of the definition of "state policeman" for purposes of retirement benefits was analyzed in *Honeycutt v. Employees' Retirement System of Alabama*, 431 So. 2d 961 (Ala. 1983). In that case, the Alabama Supreme Court considered whether an employee who was classified under the merit system as a Forest Ranger II and had been appointed a "forest law enforcement officer" met the definition of "state policeman" thus entitling him to "state policeman" retirement benefits. *Id.* at 962. In concluding that he did not fall within the definition of "state policeman" for retirement benefit purposes, the *Honeycutt* court focused, in part, on the primary duty of the Forest Ranger being the "suppression of forest fires" and further considered Honeycutt's description of his duties. *Id.* at 965–66. In discussing Honeycutt's duties, the court noted eighty percent of his time was occupied operating a truck, tractor, or other forestry equipment. *Id.* at 966.

In contrast, the court finds here that Plaintiffs have made a *prima facie* showing that they are functionally equivalent to the other investigators under the classification of "state policeman." Plaintiffs identify as comparators their fellow ABI investigators who were participating in and continued to receive state policeman retirement, both before and after the creation of ALEA. (Doc. 44 at 21). Plaintiffs testified they are doing the same criminal investigatory work, homicide work, and special inquiries, if not more so, than those agents that are receiving state policeman

retirement. (Docs. 39-3 at 66–67; 39-5 at 52–53, 83). Other comparators identified by Plaintiffs include the investigators employed by the Alabama Attorney General's Office and the Alabama Ethics Commission. (Doc. 44 at 22–23). When hired, Plaintiffs had the same classification— 11280—as their fellow investigators employed by the Attorney General. The offer of "trooper retirement" was a recruiting tool for drafting experienced investigators to apply for the position. (Docs. 39-3 at 54–55; 44-8, ¶6). Plaintiffs were told that the failure to give them state policeman retirement was an oversight that would be corrected. (Docs. 39-3 at 48; 39-4 at 40). Plaintiffs have spoken to supervisors, department managers, the head of the Alabama State Troopers Association, senior leadership at DPS and ALEA, RSA's legal counsel, and Graham in a continuous effort to obtain state policeman retirement. (Docs. 39-3 at 49–52; 44 at 28–36). Green spoke with the RSA and DPS, neither of whom opposed Plaintiffs receiving state policeman retirement. (Doc. 39-3 at 60–61). Walker testified that RSA gave Plaintiffs figures of what it would cost to get them caught up on state policeman retirement. (Doc. 39-4 at 153).

The evidence above, coupled with the fact Defendants have not identified legal authority to classify Plaintiffs otherwise, suggests Plaintiffs have been misclassified as a matter of state law, arguably implicating substantive due process and equal protection concerns as matters of federal law. At a minimum, questions of material disputed fact exist which preclude summary judgment in Defendants' favor on Plaintiffs' due process claims.

### B. Equal Protection Clause Violations

Plaintiffs claim that Defendants have failed to treat them in a manner equal to other similarly situated employees of the State of Alabama, by continuing to deny Plaintiffs participation in state policeman retirement. (Doc. 14, ¶ 35). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. Equal

protection of the laws requires that States and their officials ensure "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Section 1983 was enacted to enforce the Fourteenth Amendment. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) ("Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.").

As an initial matter, Defendants contend Plaintiffs cannot demonstrate their alleged comparators who do receive state policeman retirement were "similarly situated" in all relevant respects. (Doc. 38 at 38). Further, Defendants contend "a 'class of one' theory of equal protection is unavailing where, as here, the Plaintiffs are public employees. *Id.* at 40 (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 594 (2008)).[13]

Defendants are correct that "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987). Further, the showing that persons are similarly situated requires some specificity. *See, e.g., Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). The court finds here that Plaintiffs have proffered specific evidence that they are performing the same job, meeting the same requirements, reporting to the same supervisors, and are subject to the same standards as investigators who receive "state policeman" retirement benefits. This proffer is sufficient to create a disputed issue of fact as to whether the other Special Agents are similarly situated giving rise to an equal protection claim.

The *E&T Realty* court explained there are three broad categories of equal protection claims. 830 F.2d at 1112, n.5 (citing J. Nowak, R. Rotunda & J. Young, Constitutional Law 600 (2d ed.

---

[13]Plaintiffs respond the "class of one" theory does not bar their equal protection claims where they have alleged they have intentionally been treated differently from others similarly situated. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 564 (2000) (finding Equal Protection Clause can give rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in a class or group).

1983)). "The first and most common type is a claim that a statute discriminates on its face." *Id.* "The second type of equal protection claim is that neutral application of a facially neutral statute has a disparate impact." *Id.* Plaintiffs' claims here fall into the third type of category which occurs when "defendants are unequally administering a facially neutral statute." *Id.* Thus, Plaintiffs are not claiming that ALA. CODE § 36-27-1(23), on its face, discriminates against them. (Doc. 44 at 56). Accordingly, Defendants' reliance on case law challenging facially discriminatory legislation is inapposite. Rather, Plaintiffs contend that the failure of the Alabama State Personnel Department to apply that code section to Plaintiffs is discriminatory against them and the other direct-hire Special Agents.

"The unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *E&T Realty*, 830 F.2d at 1112–13 (citing *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). "Unequal administration of facially neutral legislation can result from either misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases). In either case, a showing of intentional discrimination is required." *E&T Realty*, 830 F.2d at 1113. "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of' ... its adverse effects upon an identifiable group." *Id.* at 1114 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

The court finds Plaintiffs have proffered sufficient evidence of discriminatory purpose by the Defendants due to the State Personnel Board and Defendant Graham's refusal to recognize that Plaintiffs satisfy the statutory definition of "state policeman," and the ALEA's deferral to Graham in this regard. In addition to their own testimony, Plaintiffs filed affidavits of Major Jerry Connor

who helped create the Special Agent (ABI Option) classification and first secretary of ALEA Spencer Collier, who attest that Plaintiffs were approved to perform and did perform the duties of crime investigator for the State of Alabama. *See* Affidavits of Conner, and Collier (Docs. 44-8, 44-27). Both DPS (Doc. 44-2 at 4) and RSA (Docs. 3-1; 44-3 at 5; 44-28) have represented they have no objection to Plaintiffs participating in the program for policeman retirement, however the State Personnel Board and Defendant Graham take the position Plaintiffs do not meet the definition for state policeman under ALA. CODE § 36-27-1(23), for purposes of retirement benefits. Plaintiffs point out that Graham has never produced any written resolution or recording of action taken by the State Personnel Board to define the retirement for Special Agents (ABI Option). (Doc. 44 at 35–36). Plaintiffs also reference Graham's treatment of Brooke Walker in instituting litigation against Walker for purported overpayments of salary as further evidence of the purposeful discrimination against Plaintiffs.[14]

Graham and the State Personnel Board claim the authority to deny Plaintiffs the right to participate in state policeman retirement. *See* (Doc. 44-30 at 5–6). The Alabama legislature, however, has provided that the retirement system is "under the management of the Board of Control for the purpose of providing retirement allowances and other benefits under the provisions of this article for employees of the State of Alabama." ALA. CODE § 36-27-2(a). The Alabama Supreme Court confirmed this authority when it held, "[t]he Board of Control of the Employees' Retirement System [RSA] has the authority 'in all cases of doubt' to determine who is an employee within the meaning of the Employees' Retirement System law." *Honeycutt*, 431 So. 2d at 964 (citations omitted). As noted above, RSA does not oppose Plaintiffs' participation in state policeman retirement. *See* (Docs. 3-1; 44-3 at 5; 44-28).

---

[14] Plaintiffs also claim Graham and the State Personnel Board engaged in harassing discovery tactics in that case by subpoenaing personnel records of her husband who was not a party to that lawsuit. (Doc. 44 at 38, n.7).

In a light most favorable to the Plaintiffs, the culmination of these factors require, at a minimum, that Plaintiffs' equal protection claims be presented to a finder of fact. Accordingly, Defendants' motion for summary judgment on Plaintiffs' equal protection claims is denied.

### C. Claims under the Alabama Constitution

Defendants concede Alabama federal courts have recognized there may be an equal protection claim under the Alabama Constitution. *See Dyas v. City of Fairhope*, No. 08-0232-WS-N, 2010 WL 5477754, at *3 (S.D. Ala. Dec. 30, 2010); *see also Wallace v. Jones*, No. 2:10-cv-361-MEF, 2013 WL 5406799, at *12 n.11 (M.D. Ala. Sept. 25, 2013); *Cleveland v. City of Montgomery*, No. 2:13CV732-MHT, 2014 WL 6461900, at *6 (M.D. Ala. Nov. 17, 2014).

For the reasons discussed in the sections above regarding Plaintiffs' federal claims, the Court denies Defendants' motion for summary judgment on Plaintiffs' equal protection and due process claims under Alabama's Constitution. Likewise, the presence of some factual disputes and legal issues, including application of the statute of limitations and administration of any potential remedies, precludes summary judgment for Plaintiffs.

## V. Conclusion and Order

For the reasons stated, it is hereby **ORDERED**:

Defendants' motion for summary judgment (Doc. 37) is **DENIED** and Defendants' motion to exclude certain evidence (Doc. 47) is **DENIED AS MOOT.** It is further

**ORDERED** that a telephonic status hearing has been scheduled for Thursday, September 21, 2017, at 1:00 p.m. CDT. (Doc. 66). At the hearing, the parties should be prepared to address the following:

1. Scheduling of this case for trial/hearing during the week of October 23, 2017;

2. The purely equitable nature of the relief sought and whether Plaintiffs contend any issues require a jury; and

3. The applicability of the statute of limitations to identify the time frame Plaintiffs are entitled to benefits, in the event Plaintiffs prevail, and the personal contributions that would be required by Plaintiffs.

**DONE** and **ORDERED** this 20th day of September, 2017.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE