IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY L. GREEN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-697-DAB |
| | ) | |
| HAL TAYLOR, in his official | ) | |
| capacity as Acting Secretary of | ) | |
| Law Enforcement for the Alabama | ) | |
| Law Enforcement Agency, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL MEMORANDUM OPINION AND ORDER**

This matter is before the court following the status conference conducted September 21, 2017, at which the court advised the parties of its intention to enter an order on the issue of Eleventh Amendment Immunity. The intent of this Order is to supplement the court's Memorandum Opinion and Order issued September 20, 2017, which implicitly rejected the Defendants' arguments that immunity bars Plaintiffs' claims against them. This Supplemental Memorandum Opinion and Order will serve to explicitly address the court's ruling on Defendants' claim of immunity.

The court will not repeat the background and case facts here, but rather refers the parties and any reviewing court to the September 20, 2017, Memorandum Opinion and Order. (Doc. 67).

In their brief, Graham and the Secretary argue Eleventh Amendment Immunity is an absolute bar to a suit against them in their official capacities. (Doc. 38 at 26–27).[1] The Eleventh Amendment provides immunity by restricting federal courts' judicial power:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI. Defendants bear the burden of establishing they are entitled to Eleventh Amendment Immunity from suit. *See Misener Marine Const., Inc. v. Georgia Ports Auth.*, 199 F. App'x 899, 900 (11th Cir. 2006) (per curiam) (affirming denial of defendant's motion to dismiss where it "failed to satisfy its burden of establishing Eleventh Amendment Immunity at this procedural juncture.").

It is well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an "arm of the State" is sued. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). To receive Eleventh Amendment immunity, a defendant need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State. *See Regents of the Univ. of*

---

[1] Defendants' arguments of qualified immunity (Doc. 38 at 32–36) are not addressed as the individual claims against Graham and the Secretary have been dismissed.

*Cal. v. Doe*, 519 U.S. 425, 429–30 (1997). Thus, because a suit against a government official in her official capacity is effectively a suit against the government entity, the official may invoke those immunities the entity itself possesses. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 280 (internal citations omitted).

"The Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). A State may consent to suit in federal court or Congress may abrogate the States' sovereign immunity. *Id.* (internal citations omitted).

Consent has been found in circumstances in which a State has invoked the federal forum by removal. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter … in a federal forum"); *see also, McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1170 (10th Cir. 2000) (holding that "an unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum."). As the Court in *Lapides* explained, "It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction,

3

thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Lapides*, 535 U.S. at 619. Although the *Lapides* Court expressly limited its holding to state-law claims because the only federal claim in that case had been dismissed, the Court discussed waiver and removal in broad language, referencing the "general principle" that immunity is waived where a State voluntarily invokes a federal court's jurisdiction. *Id.* at 620.

Cases following *Lapides* have similarly applied waiver of immunity from suit in a federal forum in the removal context. *See, e.g., Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) ("Court will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction."); *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) ("When a State, facing suit in its own courts, purposefully requests a federal forum, it expresses a clear intent to waive immunity from suit."). And "[m]ost circuit courts seem to agree that the *Lapides* Court's reasoning should apply in cases involving federal law claims as well as those involving state law claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1300 (11th Cir. 2013) (collecting cases).

In *Stroud*, the Eleventh Circuit discussed the split among the circuits regarding the import of *Lapides*' holding as it relates to a State's immunity from liability as distinguished from its immunity from suit. *Id.* at 1300–01. Discussing sovereign immunity as a divisible concept, the *Stroud* court held that "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts." *Id.* at 1301. As pointed out in *Stroud*, however, other circuits interpret *Lapides* "to establish the general rule that a state's removal to federal court constitutes a waiver of immunity, regardless of what a state waived in its own courts." *Id.* at 1300 (citing *Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 461 (7th Cir. 2011); *Embury v. King*, 361 F.3d 562, 564–65 (9th Cir. 2004); *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1204–06 (10th Cir. 2002)).

At a minimum, the Secretary waived his immunity from suit by removing the case to federal court.[2] The court need not decide whether the removal also waived his liability as application of the recognized exception to the Eleventh Amendment bar to suits against States, as enunciated in *Ex parte Young*, 209 U.S. 123 (1908), necessitates denial of summary judgment on behalf of both Defendants here.

> Under the doctrine of *Ex parte Young*, there is a long and well-recognized exception to this rule for suits against state officers seeking

---

[2] Graham was added as a Defendant in an amended complaint after the case had been removed.

> prospective equitable relief to end continuing violations of federal law. … The availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief.
>
> *Ex parte Young* has been applied in cases where a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past. Thus, *Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219–20 (11th Cir. 2000) (internal citations and quotations omitted).

In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). But, at the same time,

> As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night. The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases

from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. In *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. **But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature.**

*Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974) (emphasis added).

In this case, for present purposes, prior to any determination of what relief, if any, Plaintiffs may otherwise be entitled, application of the principles of *Edelman* and *Ex parte Young* is premature. Rather, given the twilight between available remedies and irremedial conduct, ultimate determination of the scope of Defendants' immunity must await final adjudication. Suffice it to observe that *Ex parte Young* recognizes that some avenues for relief are prospectively available should Plaintiffs prevail on their claims.

The parties have recognized and agreed that there are no issues to be tried to a jury under the circumstances. It is therefore appropriate to set the case for a Bench Trial to allow completion of the record and adjudication of the merits of the cases. To set a date and duration for that trial, along with any pretrial procedures, a hearing will be held **Tuesday October 24, 2017, at 1:30 p.m. CDT** in Courtroom 2E in the

United States Courthouse, 1 Church Street, Montgomery, Alabama. Counsel may attend the hearing by telephone by calling 334-954-3275 and using passcode 246860# to join the telephone conference.

**DONE** and **ORDERED** this 16th day of October, 2017.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE