IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY L. GREEN,                      )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )        Civil Act. No: 2:15-cv-697-SMD
                                       )
JACKIE B. GRAHAM,                      )
    *et al.*,                          )
                                       )
            Defendants.                )

## OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Anthony L. Green (Green) is a Special Agent (SA) with the Alabama Law

Enforcement Agency (ALEA).  He brings equal protection and due process claims under

the United States and Alabama constitutions alleging that he is entitled to Tier 1 State

Policeman retirement, the State's most lucrative and expensive employee retirement plan,

because he investigates crimes and therefore meets the definition of "State Policeman"

found in the statute governing the Alabama State Employees' Retirement System.  Ala.

Code § 36-27-1 (23) (1975).  Before the Court are plaintiff's and defendants' cross motions

for summary judgment.  (Docs. 128 & 129).  There are no material facts in dispute, and for

the reasons that follow, defendants' motion for summary judgment is GRANTED and

plaintiff's is DENIED.

### II.    PLAINTIFF'S CLAIMS

SA Green brings official-capacity equal protection and due process claims under the United States and Alabama constitutions against the Alabama State Director of Personnel, Jackie Graham (Graham), and the members of the Alabama State Personnel Board, Faye Nelson, Rachel Adams, Myron Penn, Evan M. Thornton, and David R. Mellon (the Personnel Board). 2d Amd. Compl. (Doc. 92) ¶¶ 6-11. Plaintiff alleges that because his primary duty is to investigate crimes, he "is a state policeman as defined by the retirement act, Ala. Code § 36-27-1 (23)," and that Graham and others have wrongfully "excluded [him] from participation in the state policeman retirement program[.]" *Id.* ¶¶ 49, 31. He seeks declaratory and injunctive relief ordering that he be permitted to participate in the enhanced retirement program for state policemen and attorneys' fees under 42 U.S.C. § 1988. *Id.* ¶¶ 55-58.

### III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial

would be useless and the moving party is entitled to summary judgment as a matter of law."

*Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234,1243 (11th Cir. 2001). However, a mere scintilla of evidence in support of a position is insufficient; the nonmovant must produce sufficient evidence to enable a jury to rule in his favor. *Id.* The Eleventh Circuit explains that "[s]imply put, the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotes and citations omitted).

## IV.   UNDISPUTED MATERIAL FACTS

### A.   The Alabama State Employee Retirement System

The Employees' Retirement System of Alabama administers three different retirement plans with different benefits, terms, and rates for different groups of state employees. An employee's retirement plan is determined by their job classification under the State's Merit System Act. Ala. Code § 36-26-11. Classifications are the responsibility of the State Director of Personnel, Jackie Graham, who reports to the State Personnel Board. Ala. Code § 36-26-4. Job classifications are created, abolished, or modified depending on the needs of the State, and the State currently has approximately 1,300 separate job classifications. Graham Affidavit (Doc. 131-1) ¶¶ 4-6.

The State's most generous and expensive retirement plan is "State Policeman," which applies to "employee[s] in the classified service under the Merit System Act approved by the State Personnel Board to perform the duties of highway patrolman or a beverage control agent or a crime investigator." Ala. Code § 36-27-1 (23) (1975). This retirement plan was created to give enhanced benefits to law enforcement officers who were not covered by federal Social Security. Graham Affidavit (Doc. 131-1) ¶¶ 7, 33. At the time of its enactment, "highway patrolman," "beverage control agent," and "crime investigator" were job classifications under the Merit System Act. *Id.* at ¶¶ 7-8. Over time, the highway patrolman and crime investigator classifications were renamed and merged into the current State Trooper series of classifications. *Id.* at ¶¶ 8.

The next most generous retirement plan is "Law Enforcement," which applies to correctional officers, firefighters, and law enforcement officers who are not covered by the "State Policeman" plan. Ala. Code § 36-27-59 (1975). These employees receive Social Security, and the plan's enhanced benefits recognize the hazardous nature of these jobs. *See, id.* All other employees in the Employee Retirement System fall into the least generous "State Employee" plan. Each of these three plans has a more generous Tier I for employees hired before January 1, 2013, and a stingier Tier II for employees hired after that date. Ala. Code § 36-27-1 (24-27) (1975). The Alabama legislature created the Tier II plans in an effort to control the costs of the State's defined-benefit plans. Graham Affidavit (Doc. 131-1) at ¶¶ 24-27. It also closed the State Policeman plan to new participants effective January 1, 2015, and placed new ALEA hires, including newly-hired

State Troopers, who would formerly qualify for State Policeman retirement, into the cheaper Tier II Law Enforcement plan.  Ala. Code § 36-27-1 (23) (1975).

**B.      Job Classification # 11280-483, Special Agent-ABI Option**

In 2008, the Department of Public Safety (DPS) sought a new job classification of "Special Agent-ABI Option" to allow it to hire ten experienced criminal investigators to work for the Alabama Bureau of Investigation (ABI).  Conner Affidavit (Doc. 128-3) ¶ 3; Graham Affidavit (Doc. 131-1) ¶ 21; Green Dep. (Doc. 128-22) at 27-28.  Prior to the creation of this new classification, all ABI agents were hired from the ranks of State Troopers, and they retained their Trooper classification series.  *Id.*  DPS explained that it required the new job classification because it needed more ABI agents to investigate crimes and assigning Troopers to these positions had the unwanted consequence of reducing the number of Troopers available to patrol the highways and investigate traffic accidents. Graham Affidavit (Doc. 131-1) ¶ 21.  In addition, Troopers generally required additional lengthy training to acquire the skills necessary to perform the job.  *Id*; Green Dep. (Doc. 128-22) at 28.

Trooper Major Jerry Conner was personally involved in creating the new classification.  Conner Affidavit (Doc. 128-3) ¶ 3.  He modeled the position on the job classification for agents working in the Alabama Attorney General's Office: "Special Agent - AGO Option."  *Id.* at ¶ 4.  The Alabama legislature granted AGO Special Agents "State Policeman" retirement through specific statutory authorization.  Ala. Code § 36-15-6 (1975) ("all investigators appointed pursuant to this section shall be entitled to . . .

participation in any retirement plan afforded state troopers").[1] *See also* Graham Affidavit (Doc. 131-1) ¶ 20. Major Conner believed that the new Special Agent-ABI Option would also be entitled to "State Policeman" retirement, but there is no specific statutory authorization supporting this. Conner Affidavit (Doc. 128-3) ¶ 4; Graham Affidavit (Doc. 131-1) ¶ 20, 21. At some point prior to this litigation, bills were introduced in two separate legislative sessions to grant ABI Special Agents "State Policeman" retirement, but they did not pass. Green Dep. (Doc. 128-22) at 69, 92-93.

The State Personnel Department approved the new job classification and formally announced the Special Agent-ABI Option positions on August 6, 2008. Announcement (Doc. 128-4). The formal job announcement lists among the employee benefits for this position an unspecified "retirement plan." *Id.* The State Personnel Department takes the position that absent specific statutory authority, employees in the Special Agent classification qualify for the "Law Enforcement" retirement plan, not the "State Policeman" plan. Graham Affidavit (Doc. 131-1) ¶¶ 20-21, 35. Employees in the Special Agent-ABI Option positions receive Social Security retirement benefits. *Id.* at ¶ 35; Green Dep. (Doc. 128-22) at 70. They were also hired at a significantly higher pay grade than employees in the entry-level Trooper classification. Graham Affidavit (Doc. 131-1) ¶ 35.

Over time, the State has created eight "options" in the Special Agent classification: Special Agent—Securities Option; Special Agent—ABI Option; Special Agent—Homeland Security Option; Special Agent—AGO Option; Special Agent—Ethics Option;

---

[1] There is also specific statutory authorization for investigators with the Alabama Ethics Commission, who are in the Special Agent classification, to participate in the State Policeman retirement plan. Ala. Code § 36-25-3 (1975). *See also*, Graham Affidavit (Doc. 131-1) ¶ 20.

Special Agent—Arson Option; Special Agent—Tax Fraud Option; and Special Agent—Hazardous Materials and Fuel Tax Option.  Graham Affidavit (Doc. 131-1) ¶¶ 14-19.  Among these job classifications, only the two with specific statutory authorization, SA—AGO Option and SA—Ethics Option, are eligible to participate in the State Policeman retirement plan.  *Id.* at 20.  The other six Special Agent classifications participate in the Law Enforcement plan.  *Id.*

The State consolidated its law enforcement agencies, including DPS, into a new entity, the Alabama Law Enforcement Agency (ALEA), in January 2015.  As a result of the consolidation, the State Personnel Department reclassified job positions from the various legacy agencies into new ALEA job classifications.  *Id.*  The Special Agent—ABI Option classification became the ALEA Special Agent classification.  Graham Affidavit (Doc. 131-1) ¶¶ 41-42.  In creating ALEA, the Alabama Legislature provided that "[a]ny future change in classification shall not result in any change in benefits an employee previously had at a legacy agency."  Ala. Code § 41-27-7 (d) (1975).  The State takes the position that this locks employees into the retirement plan they had at their legacy agency prior to the ALEA consolidation.   Graham Affidavit (Doc. 131-1) ¶ 36.

## B.    Plaintiff – SA Anthony Green

SA Green retired from the New York State Police after 21-years of service, moved to Alabama and worked briefly for the Millbrook, Tuskegee University and VA police departments.  Green Dep. (Doc. 128-22) at 9-12.  In 2005, he accepted a position with the State as a Special Investigator in the Alabama Medicaid Agency where he investigated

Medicaid fraud.  *Id.* at 11-12.  Green was in the regular "State Employee" retirement plan while working for the Medicaid Agency. *Id.* at 29-30; Graham Affidavit (Doc. 131-1) ¶ 42.

In 2008, Green learned from an Alabama State Trooper friend that the ABI would be directly hiring Special Agents for the first time rather than exclusively promoting State Troopers to these positions.  Green Dep. (Doc. 128-22) at 27.  Green spoke with Major Conner on several occasions over a period of months about the position and Major Conner told him that the position would be covered by the State Policeman retirement plan that Troopers enjoyed.  Green Dep. (Doc. 128-22) at 36-37; Conner Affidavit (Doc. 128-3) ¶ 5.

Green applied for the SA—ABI Option position and was hired in January 2009. The enhanced State Policeman retirement was a major factor motivating Green to move from the state's Medicaid Agency to ABI.  Green Dep. (Doc. 128-22) at 34, 48.  He also received a salary increase.  *Id.* at 48.  When SA Green received his paycheck, he saw that FICA taxes were being taken out for Social Security.  *Id.* at 44.  He knew that Troopers did not pay FICA taxes and made an inquiry with the personnel department.  *Id.*  The personnel department informed him that the SA—ABI Option positions were not eligible for State Policeman retirement and that he was receiving Law Enforcement retirement.  *Id.* at 44-45.

Since his initial employment with ABI, SA Green has always participated in the State's Tier I Law Enforcement retirement plan.  Graham Affidavit (Doc. 131-1) ¶¶ 42-43. He has never participated in the State Policeman plan.  *Id.*  SA Green's primary responsibility at ABI and later ALEA is to investigate crimes.  *See, e.g.,* Announcement

(Doc. 128-4) (SA—ABI Option is responsible for "conducting statewide investigations in the enforcement of state and federal laws and regulations").  Officers in the SA—ABI Option and Troopers working at ABI and later ALEA have the same basic duties and responsibilities.  Green Dep. (Doc. 128-22) at 67-68 ("we do the exact same job, we sit in the exact same office, we do the exact same things day in and day out").

V.    **ANALYSIS**

A.    **Eleventh Amendment Immunity**

Defendants, who are all sued in their official capacities, assert that the Eleventh Amendment bars plaintiff's claims.  *See, e.g.,* (Doc. 136) at 49-55.  As an initial matter, a suit against a state officer or employee in his or her official capacity is a suit against the official's office and is no different than a suit against the State itself.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, these Alabama state officials may properly assert the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by citizens of another state[.]"  U.S. Const. amend. XI.  The Supreme Court has long recognized that the amendment embodies the principle that the States' sovereign immunity is a constitutional limitation on Article III's federal judicial power, and it bars suit in federal court against a nonconsenting state by any private party, including the state's own citizens.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).

On interlocutory appeal in this case, the Eleventh Circuit explained that sovereign immunity is a divisible concept, and a state's immunity from suit in federal court is separate from its sovereign immunity from liability on a particular claim irrespective of forum. *Green v. Graham*, 906 F.3d 955, 960 (11th Cir. 2018) (Doc. 82). These concepts are frequently referred to as forum immunity and claim immunity. *Hardy v. Ga. Dep't of Corrs.*, 2019 WL 4670758, at *4 (S.D. Ga. 2019). A state may consent to suit in federal court while retaining its sovereign immunity on a particular claim in that forum. *Green,* 906 F.3d at 960; *Stroud*, 722 F.3d at 1301.

On interlocutory appeal, the Eleventh Circuit held that because the Secretary of ALEA, Spencer Collier, who is no longer a party, removed this case to federal court, the State of Alabama waived its forum immunity. *Green*, 906 F.3d at 961-962. This waiver is effective against all Alabama officials sued in their official capacities whether they were parties at the time of removal or not. *Id.* The Court of Appeals reasoned that because the State of Alabama is the real, substantial party in interest, separate State officials could not take contradictory positions on whether the State consented to suit in federal court. *Id.* at 962. The Court did not reach the claim immunity issue because it lacked jurisdiction to do so on interlocutory appeal. *Id.* at 964.

### 1. Plaintiff's Federal Constitutional Claims

Plaintiff argues that his claims fall within the exception to Eleventh Amendment immunity fashioned by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g.*, (Doc. 143) at 34. This doctrine permits "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Medical*

*Assoc. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis in original).  The doctrine is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the 'the supreme authority of the United States'" while accommodating the constitutional immunity of the States.  *Pennhurst*, 465 U.S. at 105 (*quoting Young*, 209 U.S. at 160).   Because of these federalism concerns, *Young* does not "encompass retroactive relief, for to do so would effectively eliminate the constitutional immunity of the States."  *Id.*  The doctrine applies only to ongoing and continuous violations of federal law and cannot be used to adjudicate the legality of the State's past conduct.  *Summit Medical Assoc.*, 180 F.3d at 1337.  The Supreme Court instructs that "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."  *Pennhurst,* 465 U.S. at 102-103.

Plaintiff affirmatively disclaims any past State Policeman retirement benefits and essentially asks this Court to order that his current Tier I Law Enforcement retirement be closed out and that he be reclassified and treated as a new employee for retirement purposes from this date going forward.  *See* (Doc. 44) at 85-86.  Upon retirement he would receive a "split retirement" with his past service credited in the Tier I Law Enforcement plan and his service going forward credited in the State Policeman plan.  *Id.*  Despite plaintiff's disclaimer of past State Policeman benefits, his claim is still fundamentally retrospective because the State closed the State Policeman retirement plan to all new participants before this lawsuit was filed.

The Alabama legislature closed the State Policeman plan to all new participants effective January 1, 2015, and placed new Troopers and other law enforcement hires in the Tier II Law Enforcement plan.  Ala. Code § 36-27-1(23) (1975).  Plaintiff filed this lawsuit in State court on September 11, 2015, and it was removed to this Court on September 21, 2015.  In order for this Court to grant plaintiff the relief he seeks, it would have to look back in time and determine that the State violated his federal constitutional rights on the date he was hired and place him in a retirement plan that the State closed before this lawsuit was filed.  This is retroactive, not prospective relief.  It necessarily adjudicates the legality of the State's past conduct despite the fact that the alleged financial harm to plaintiff continues.  Ordering defendants to reclassify plaintiff effective today as if he were a new hire would only serve to place him in the Tier II Law Enforcement plan which is less generous than the Tier I Law Enforcement plan he currently enjoys.  Placing him in the closed State Policeman retirement plan is a form of retroactive relief.

In addition, the Eleventh Amendment bars nominally equitable claims when the relief in essence requires the State to expend money to compensate for past action. *Edelman*, 415 U.S. at 666-668.  Here, the only desired effect of the injunctive relief plaintiff seeks is payment of a higher pension from the State.  Payment of money from the State is not an ancillary effect of the relief sought; it is its sole purpose.  Therefore, although pleaded as a request for declaratory and injunctive relief, plaintiff seeks the functional equivalent of money damages for the State's alleged violation of federal law when it hired him in 2009.  Accordingly, plaintiff's federal constitutional claims do not fall within the *Ex parte Young* exception and are barred by the Eleventh Amendment.

## 2.     Plaintiff's State Constitutional Claims

In addition to his federal equal protection and due process claims, plaintiff brings the same claims pursuant to the Alabama Constitution of 1901. 2d Amd. Compl. (Doc. 92) ¶¶ 47, 50, 54.  As discussed above, defendants' voluntary removal waived the State's forum immunity.  *Green*, 906 F.3d at 961-962 (11th Cir. 2018) (Doc. 82).   However, defendants retain all defenses they would have enjoyed in state court including immunity from liability.  *Id.* at 960; *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013).  In addition, the *Ex parte Young* exception is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 106.  Therefore, the issue is whether Alabama retains immunity from liability under State law on plaintiff's State constitutional claims.

Alabama's sovereign immunity is enshrined in the Declaration of Rights within its constitution which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. 1901 Art. I, § 14.  The Alabama Supreme Court has repeatedly held that this provision "'affords the State and its agencies an 'absolute' immunity from suit in any court.'" *Ex parte Ala. Dep't of Transp.*, 978 So. 2d 17, 22 (Ala. 2007) (quoting *Haley v. Barbour Cty.*, 855 So. 2d 783, 788 (Ala. 2004)).  The Eleventh Circuit describes this immunity as "'nearly impregnable.'"  *Stroud*, 722 F.3d at 1303 (*quoting Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002).

The Alabama Supreme Court recognizes four exceptions to the State's sovereign immunity.  *Latham v. Dep't of Corrs.*, 927 So. 2d 815, 821 (Ala. 2005).  State officials are not immune from actions that: (1) seek to compel them to perform their legal duties; (2) seek to enjoin them from enforcing unconstitutional laws; (3) seek to compel them to

perform ministerial acts; or (4) seek a declaration construing a statute under Alabama's Declaratory Judgments Act, Ala. Code § 6-6-220 *et seq* (1975). *Id.*   In general, the State retains its immunity from any lawsuit that would "result in the payment of money from the State." *Id.*  The Alabama Supreme Court instructs that "[e]ven when an action names the proper State official in his or her representative capacity, such an action will be barred if it is, in substance, an action against the State for damages." *Ex parte Ala. Dep't of Transp.*, 978 So. 2d at 22.  A suit against a State official is barred when a result favorable to a plaintiff would require payment from the State treasury.  *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006).

Here, as discussed above, the only effect of a judgment in favor of plaintiff would be an increased payment from the State treasury.  Therefore, defendant State officials are immune from liability on plaintiff's State constitutional claims.

B.    **Equal Protection Claim**

1.    **Class-of-One Equal Protection Claims**

Defendants argue that plaintiff is asserting a class-of-one equal protection claim arising from public employment that is barred by the Supreme Court's holding in *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  (Doc. 136) at 29-34.  Although equal protection claims typically concern governmental classifications that affect a distinct and identifiable group of people, the Supreme Court has recognized the class-of-one theory "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Westbrook v. Olech*, 528 U.S. 562, 564 (2000).  Under this theory, "[w]hen those who

appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference[.]"  *Engquist,* 553 U.S. at 603.

The Eleventh Circuit instructs that "[f]or a group to qualify properly as identifiable for the purpose of an Equal Protection Clause claim, substantive group characteristics must pop out that allow us to separate readily entities or people into discrete groupings and clearly identify those persons that suffered the alleged discrimination and those persons that did not."  *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012).  Here, plaintiff argues that he belongs to the group of current ALEA State Bureau of Investigation (SBI) special agents who were initially hired by DPS into Job Classification # 11280-483, Special Agent—ABI Option.  He calls this group the "direct hires."  Almost by definition, employees in a particular State job classification are a discrete and readily identifiable group.  To hold otherwise would turn the notion of classification on its head.  Plaintiff contrasts the Special Agent—ABI Option employees with ABI and ALEA Special Agents who came from the ranks of Alabama State Troopers and retained their Trooper classifications.  State Troopers are also a discrete and readily identifiable group.  Therefore, plaintiff is not making a class-of-one claim, and his equal protection claim is not barred by *Engquist*, 553 U.S. 591 (2008).

### 2.     Rational Basis Review

The State's action here easily survives rational basis review.  The Eleventh Circuit explains that "[i]n the absence of any allegation that the government discriminated on the basis of a suspect classification including race, alienage, national origin, gender or illegitimacy, we evaluate equal protection claims under rational basis review[.]"  *Checker*

*Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908, 921 (11th Cir. 2018).  Under this standard, the reviewing court asks only whether the challenged action is "rationally related to some legitimate government purpose." *Id.* (internal quotes and citation omitted).

If the agency could have been pursuing a legitimate goal, the court asks only whether a rational basis exists for the agency to believe that its action furthered that goal. *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018).  "This inquiry occurs entirely in the abstract because the *actual* motivations of the enacting governmental body are entirely irrelevant, as is whether the legitimate basis was actually considered[.]" *Id.* (internal quotes and citation omitted).  The agency "has no obligation to produce evidence to sustain the rationality of a . . . classification, and the complaining party has the burden to negate every conceivable basis which might support it." *Id.* (internal quotes and citation omitted).

The Eleventh Circuit instructs that "[u]nder rational basis review, we apply a strong presumption of validity." *Id.* (internal quotes and citation omitted).  The Circuit Court notes that "[n]ot surprisingly, rational basis review is easily met," *Checker Cab*, 899 F.3d at 921 (internal quotes and citation omitted), and "almost every statute subject to the very deferential standard is found to be constitutional." *Castillo*, 899 F.3d at 1213 (internal quotes and citation omitted).

Here, plaintiff argues that State Troopers who became ABI agents receive a more generous retirement than directly hired ABI agents in the Special Agent—ABI Option classification despite the fact that they perform the same job.  The Court has no trouble finding that this disparity in retirement plans survives rational basis review.  State

16

Personnel Director Graham explains that the State provides a more generous retirement to its State Troopers because they are excluded from Social Security retirement.   Griffin affidavit (Doc. 131-1) ¶ 7.  *See also Honeycutt v. Emps.' Ret. Sys. of Ala.*, 431 So. 2d 961, 964 (Ala. 1983) ("[t]he legislature formally accounted for the difference in social security coverage for regular state employees and state policemen by adopting a joint resolution, Act. No. 230, 1955 Ala. Acts 539, which called for increased benefits for state policemen to offset their ineligibility for social security coverage").  Directly-hired officers in the Special Agent—ABI Option classification participate in Social Security.  Green Dep. ((Doc. 128-22) at 44.[2]  Making up for a lack of Social Security retirement among a class of its employees is a legitimate government purpose and providing a more generous State retirement to these employees is rationally related to this purpose.

Looked at from the other angle, the decision not to grant directly-hired ABI Special Agents the more expensive State Policeman retirement is a simple cost-saving measure. "'[T]here can be no question that generating budget savings . . . is a legitimate governmental purpose,'" and refusing to give every law enforcement officer State Policeman retirement is rationally related to the purpose of saving money.  *Benjamin v. Town of Fenton*, 892 F. Supp. 64, 67 (N.D.N.Y. 1995) (upholding cut in judge's pay on rational basis review) (*quoting New York City Managerial Emps. Assoc. v. Dinkins*, 807 F. Supp. 958, 966 (S.D.N.Y. 1992) (upholding salary freeze and pay cuts for municipal managerial employees on rational basis review)).  In an effort to control the costs of its

---

[2] Green had already qualified for Social Security retirement from his previous New York State Police career and  considered his FICA payments for his DPS job "wasted money" because they would not significantly increase his Social Security retirement.  Green Dep. (Doc. 128-22) at 70.

defined benefit retirement plans, the State created the less expensive Law Enforcement plan, introduced the Tier II plans in 2013, and closed the State Policeman plan to all new participants including newly-hired Troopers in 2015. *See* Ala. Code §§ 36-27-59; 36-27-1 (23) & (27). For these reasons, the State's action in placing directly-hired ABI Special Agents who had never been Alabama State Troopers in the Law Enforcement retirement plan survives rational basis review. The United States Constitution simply does not mandate that the State of Alabama maintain a single, uniform retirement plan for all of its law enforcement officers who investigate crimes.[3]

### C.   Procedural Due Process Claim

### Plaintiff has no Liberty or Property Interest.

Count Two is a procedural due process claim under the United States and Alabama constitutions. (Doc. 92) at 15-17. Plaintiff alleges that "Defendants have deprived Green of his property rights [in State Policeman retirement] without any process or procedure whatsoever." (Doc. 128) at 69. Defendants argue that SA Green never had a property right in State Policeman retirement. (Doc. 136) at 43-49.

To state a due process claim, plaintiff must show that he had a constitutionally-protected liberty or property interest, state action, and constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The Eleventh Circuit explains

---

[3] Plaintiff also brings an equal protection claim under the Alabama Constitution. 2d Amd. Compl. (Doc. 92) at ¶¶ 48-51. Plaintiff concedes that "both equal protection and due process under the Alabama Constitution is construed the same as under the United States Constitution." Pl's Opp. (Doc. 143) at 32. Therefore, plaintiff's State equal protection claim fails for the same reasons as his federal equal protection claim and requires no separate analysis.

that "[p]rocedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." *Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995) (*citing Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir. 1987) (en banc)).  To determine if a procedural due process violation occurred here, the Court must determine: (1) whether SA Green had a constitutionally-protected property interest in State Policeman retirement; (2) whether he was deprived of that interest; and if both of these elements are established (3) whether the State failed to use constitutionally sufficient procedures before the deprivation occurred.  *Id.*  Plaintiff's claim here fails on the first element.

In order to have a protected property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have *a legitimate claim of entitlement* to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (emphasis added). Property interests for the purpose of procedural due process "are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Id.; see also Vineyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002).  Here, plaintiff argues that § 36-27-1 (23) grants him an entitlement to State Policeman retirement.  The statute defines State Policeman as "an employee in the classified service under the Merit System Act approved by the State Personnel Board to perform the duties of highway patrolman or a beverage control agent or a crime investigator."  Ala. Code § 36-27-1 (23) (1975).

Plaintiff claims that he qualifies as a State Policeman under § 36-27-1 (23) because his primary duty is to investigate crimes, and he performs the same job as Troopers assigned to ABI.  *See* 2d Amd. Compl. (Doc. 92) ¶¶ 27, 53.  However, in *Honeycutt* the Alabama Supreme Court explained that "the reference in § 36-27-1 (23) to 'crime investigator' is a reference to a merit system classification which had been approved by the Personnel Board and existed at the time that classification was referenced in the act, but which has since been abolished as a separate classification and merged into a new classification in the Department of Public Safety."  431 So. 2d at 965.

Presumably, every law enforcement officer employed by the State investigates crimes as a substantial part of their duties, and the State maintains two separate retirement plans for police officers: Law Enforcement and State Policeman.  The Law Enforcement retirement plans would be completely superfluous if every police officer who investigates crimes were statutorily entitled, as a property right, to State Policeman retirement.  In addition, plaintiff's interpretation of § 36-27-1 (23) would render §§ 36-15-6 and 36-25-3 specifically granting Special Agents in the Attorney General's and State Ethics offices State Policeman retirement totally redundant.  Of course, "'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]'"  *Ex parte Lambert*, 199 So. 3d 761, 766 (Ala. 2015) (*quoting Ex parte Welch*, 519 So. 2d 517, 519 (Ala. 1987)).  *See also, Hughes v. Gen. Ret. Sys. for Jefferson Cty.*, 541 So. 2d 543, 545 (Ala. Civ. App. 1988) (rejecting plaintiff's interpretation of retirement statute and holding "Under [plaintiff's] analysis, Section 12(d)

renders Section 17 wholly superfluous.  This cannot have been the legislature's intent.").  At the very least, § 36-27-1 (23) is too imprecise to create an entitlement.

General principles of statutory construction also undermine plaintiff's interpretation of the statute.  (Doc. 136) at 47-48.  Defendants point to the cannon of *noscitur a sociis*— or interpreting ambiguous words by looking to those around it—to show that the phrase "crime investigator" refers to a specific job classification, rather than a general description of duties.  This method of statutory construction has been viewed favorably in this Circuit.  *In re Wild*, 955 F.3d 1196, 1208 (11th Cir. 2020).  It is undisputed that "highway patrolman" and "beverage control agent" were both specific job classifications.  The Court agrees with defendants that construing "crime investigator" as a general descriptive term alongside two terms that reference specific job classifications would create a redundancy because highway patrolmen and beverage control agents also investigate crimes.  For all of these reasons, "crime investigator" as used in the statute is a specific former job classification that is the forerunner of today's Alabama State Trooper classifications.  It is not a general descriptive term.  *Id.*

Plaintiff argues that the holding in *Honeycutt*, combined with the statements from Major Conner that he would receive State Policeman retirement somehow establishes a constitutionally-protected property interest.  (Doc. 44) at 73-79 (incorporated by ref. (Doc. 143) at 31).  This argument fails for the following reasons:  First, *Honeycutt* does not support plaintiff's position.  In *Honeycutt*, the Alabama Supreme Court held that a Forest Ranger was not entitled to disability benefits under the State Policeman retirement plan.  431 So. 2d at 965-966.  The *Honeycutt* plaintiff argued that "the statutory definition of

'state policeman' does not require that an individual be actually classified as a highway patrolman, beverage control agent or crime investigator, but that one merely be 'approved' to perform the duties of those classifications."   431 So. 2d at 965.   The forest ranger plaintiff argued that "he was 'approved' to perform the duties of a 'crime investigator' by virtue of his classification as a Forest Ranger II and a 'forest law enforcement officer.'" *Id.*

The Alabama Supreme Court *rejected* this argument and specifically held that, as here, there was "no evidence or suggestion of the fact that the appellant was 'approved' by the State Personnel Board to perform the duties of a 'state policeman' as otherwise required by § 36-27-1 (23)." *Id.* at 965.  Although the Alabama Supreme Court examined plaintiff's actual job duties and found them to be primarily forestry and not law enforcement, the lack of Personnel Board approval undergirds its holding in *Honeycutt*. *Id.*  The Alabama Supreme Court has never squarely held that a non-Trooper law enforcement officer who investigates crimes as his primary duty is automatically entitled to State Policeman retirement, and *Honeycutt* certainly does not grant plaintiff here a property right.

Second, Major Conner is not the State Personnel Board, and his statements do not bind the Board.  A promise from a State official who is without power to grant the benefit promised does not create a property interest.  A legitimate claim of entitlement, as opposed to a unilateral expectation per the *Roth* standard, means a clear legal right to the benefit at issue.  Section 36-27-1 (23) does not afford plaintiff this degree of certainty, nor does *Honeycutt,* nor Major Conner's promises.  Plaintiff's arguments show at best a hope that he might somehow qualify for the State's best retirement, not a clear legal entitlement to

it.  Accordingly, because he lacks a constitutionally-protected property interest in State Policeman retirement, plaintiff has failed to establish a procedural due process claim under either the United States or Alabama constitutions.  *Ex parte DBI, Inc.*, 23 So. 3d 635, 643 (Ala. 2009) (the Alabama Supreme Court "has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution") (internal quotes and citation omitted).

## VI.    <u>CONCLUSION</u>

For the above-stated reasons, defendants' motion for summary judgment (Doc. 129) is GRANTED and plaintiff's motion for summary judgment (Doc. 128) is DENIED. Plaintiff's claims are DISMISSED in their entirety WITH PREJUDICE.  A separate judgment shall issue.


Done this 28th day of July, 2020.


/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE